Next case is number 22-1752, United States v. Montalvo-Flores. Ms. Arkell? Good morning, your honors, and may it please the court. My name is Louise Arkell. I'm an assistant federal public defender with the district with the Federal Public Defender's Office in New Jersey. And I represent we represent Christopher Montalvo-Flores. If I could please reserve three minutes for rebuttal. Great. Thank you. The district court erred when it found that Mr. Montalvo-Flores had no expectation of privacy in the rented car. The same general property-based concept that guided the court, the Supreme Court in Byrd, should have guided the district court here. That concept is that one who owns or lawfully possesses or controls property will in all likelihood have legitimate expectation of privacy by virtue of the right to exclude. I think what you just said is is indisputable. Perhaps Mr. Ramsey will will tell me otherwise. But let me give you a hypothetical because, you know, that's what we like to do. Had your client put on evidence, for example, the girlfriend? She was on the rental contract, correct? Yes. OK, so the girlfriend takes the stand and testifies that at the time Mr. Montalvo-Flores was searched and arrested, when he had the key fob, if she testifies that I rented the car, he's my boyfriend, I let him use my car. You win under Byrd, right? I think we would have, but I think we should. So here, where's the proof? There's there is just what jumps out at me from this record is the absence of proof like the type of hypothetical I just described. I don't think there needs to be sort of affirmative proof. What we had was Detective Holmes describing numerous circumstances and they're just being present numerous circumstances that spoke to Mr. Montalvo-Flores' right to exclude. For example, number one, he had the keys. That is undisputed. Car thieves have keys. Correct, but he also he asserted they're my keys, my car. He testified at the hearing that? No, the Detective Holmes testified that, but it was undisputed. District Court didn't have to accept that as true. It's true that Mr. Montalvo-Flores said that, but the District Court didn't have to believe that it was true that it was his car and his keys. In fact, they found out it wasn't his car. They found out it was Enterprise's car. He didn't have to, District Court didn't have to believe it, but it should have considered it. And what the District Court said that there was no evidence because he didn't, because there was no evidence that he, that Mr. Montalvo-Flores operated or occupied the car. There was little evidence. In fact, there was number one, the mistake there, the mistake of law was hinging his determination on whether Mr. Montalvo-Flores operated or occupied. Not a requirement in Byrd and it shouldn't have been the central consideration in this case. Number two, the court said there was no evidence when in fact there were numerous considerations that should have spoken to Mr. Montalvo-Flores' right to exclude. As I said, he had the keys. The police had witnessed an exchange of the car between two people that they knew were boyfriend and girlfriend. They knew of the relationship. They also found out almost immediately that the car was not lost or stolen. And I think what's sort of different here or an unusual case is it's so ordinary that people exchange keys and one might not have a license, but that doesn't mean or may not like to drive. But think about a husband or wife or boyfriend or girlfriend. Why isn't it equally plausible that the girlfriend would say to Mr. Montalvo-Flores, you can use my car. In fact, you can use it anytime you want except when you're dealing that stuff. It's plausible, but it didn't happen here. How do we know? We don't know because there's no evidence. Do you know, I can take a guess as to why she didn't take the stand and testify. She didn't want to be implicated in this whole thing, but do you have any idea why? Do you know why she didn't come and testify? I don't, Your Honor. Why did Mr. Montalvo-Flores himself not testify at the suppression hearing? I don't know, Your Honor. I realize you went to counsel then, but what they relied on was a pretty significant cross-examination of Detective Holmes. Very significant. And what that revealed is that he wasn't seen operating it except when Detective Holmes sort of wavered in one point. But consistently, the testimony was that he didn't operate. He wasn't doing anything lawful. So those were the indicia sort of of possession. Your argument is he never drove the car and never operated it? Not on this record, Your Honor. There is no evidence that he did that. But somebody operated the car at some point. Presumably, Ms. Pichotta, and I'm not sure how to pronounce that name, but Ms. Pichotta rented it, so. But there's no doubt that drugs were found in the car. Drugs were found in the car. In the trunk. In the trunk, yes. Are we dealing with clear error as the standard of review? Yes, Your Honor. On the facts, yes. The error the District Court made, though. I'm sorry. Let me just, because I don't want to forget this. My understanding is the District Court made a finding that Montalvo Flores was never in the car. Is that right? Correct. So why was, are you arguing that was clearly erroneous or that something else was clearly erroneous? The clearly erroneous is that I think there was no evidence supporting his possession and control over the car and that it was lawful. The District Court, because I think the other half of the right to exclude is that the possession was lawful. Mr. and even Detective Holmes testified and acknowledged that there was nothing unlawful about Mr. Montalvo Flores having the keys, especially when we knew that the car was not lost or stolen and that the exchange was from his girlfriend. It was lawful possession and even the District, the Supreme Court in Byrd, even if it were unlawful, it wouldn't necessarily preclude him from having a, from an expectation of privacy. But here there was absolutely nothing unlawful and it is such an ordinary circumstances, circumstance that somebody would have the keys to a car and expect, for example, I think it sounds like you're asking us the right opinion that it says it's per se a reasonable expectation per se proof of a reasonable expectation of privacy. If that one has the keys. No, we are specifically not asking that there be a bright line rule in part because there were other circumstances here. So we don't need to go there. So if it's keys plus, what are the plus factors here? The pluses are the exchange of the keys and car, the knowledge of the relationship between this Pashada and and Mr. Montalvo Flores and the fact that there was nothing unlawful about his having the keys and that the car was not lost or stolen. Was your argument that he was never in the car and he never drove the car? Is that? There's nothing in the record that indicates that he was either in the car or that he operated or even occupied. That he just operated or occupied the car. Operate, I see. So your argument is that he did nothing wrong. He had nothing to do with the car or the substance that was found in the car. Our argument isn't necessarily he had nothing to do with the car. His connection to the car was that his girlfriend gave him the keys and he had the keys and he was doing nothing unlawful with the keys. He was doing nothing by virtue of having the keys. Your argument is that's the only connection he had with this car. He happened to have had the keys. Given to him by his girlfriend and in the hotel room where the car was parked in the hotel parking lot. So there was some proximity there. So there's a connection. Also, the lawfulness is important. And also, I think taking the example of it's the right to exclude that is so critical here. I think if you think in terms of in these circumstances a hotel guest next door, the neighbor hotel guest next door comes and wants to use his car. Mr. Is there any doubt that Mr. Montalvo in these circumstances would be allowed to say no, I don't want you to use my car. And if the if the other hotel guest persists, he would have a right to exclude him. It's the same. But if he had stolen the car and the person in the room next door said, can I borrow your car? He'd also be able to say no. But he wouldn't have a reasonable expectation in privacy if he'd stolen the car. Right, right, right. Well that that's why I'm not sure the ability to exclude gets you very far. That's my point. That is the I mean, I don't mean to interrupt. I'm sorry, but I think that is the critical focus of the bird talks about the concept is one who lawfully possesses and the expectation of privacy by virtue of the right to exclude that that is the property-based concept that is relevant. Bird lawfully possessed the car, not the keys. But Mr. Mr. The keys indicated his connection to that car. Maybe. That was why I asked the hypothetical the keys with a little bit of testimony that that he was at the time. He was arrested legitimately possessing the keys and having legitimate control over the car. I think I think you can win. I'm what I'm suggesting is and and obviously, you know, we're here so you can tell me why I'm wrong. But what I'm suggesting to you is my review. The record indicates that there's a failure of proof here that it's plausible. It's perfectly plausible that the girlfriend gave him the keys gave him Dominion and control over the car. He had it the entire week or or month or what have you. That's all plausible. It's also plausible that she had previously given permission to use the car and didn't at this time. It's plausible that he took the car from her at this moment. It's plausible that she said you can use my rented car as long as you don't put any drugs in it and be if if all of those things are plausible then under clear error. How can we how can we upend the order of the district court? I think because Detective Holmes who was the you know, one of the major participants arresting officer he testified that the exchange had been seen there was nothing limited or nefarious about it. They didn't suggest it was it was undisputed when exactly did the exchange occur? It had to have occurred because the car was rented when yeah, right be at least it couldn't have happened before the day before the arrest. The car was rented November 5th and the arrest occurred November 6. So it could not have been before that. So it was within 24 hours. The exchange occurred. Yes. Yeah, I think that helps you because if the exchange seemed like permissive and normal correct. Yes, your Honor then something would have had untoward would have had to happen in between the arrest and that exchange for him to lose Dominion over it. I think also I don't know if this hypothetical helps but I think I and I keep going back to the ordinariness of these circumstances, you know between married couples one may not drive one may one may drive. It's same situation hotel room. They want the the non-driving spouse has the keys. Is there any doubt that that hurt that that non-driving spouse? Given sort of similar circumstances. They saw the exchange there really isn't and then you'd expect the spouse to come forward and say yeah, I let I let I let her use my car but is it required where it's your burden of I think that's but I think it was a deuce through detective Holmes who says your case through the other the evidence the other side profit exactly. Okay. Well, that's that's possible. Yes, that's that's allowed and I see my job might not be an optimal way to try to prove one's case but it's I understand the I understand the limitations that the trial counsel would have had at the hearing. Thank you, Your Honor. My time is up. Thank you. Thank you. We'll hear you on rebuttal. Thank you. Let's hear from Mr. Ramsey. May it please the court Richard Ramsey counsel for the United States got good morning judges. Let's see if we can go through the record here and see what is in the record in connection with this suppression hearing that might indicate that would indicate that there was a Dominion and control over the car by Mr. Montalvo Flores. First thing we know from the from the record is that Jennifer Pashada was Mr. Montalvo Flores his girlfriend. Is that correct? That there was testimony about that. I don't think the district court was no the district court all the district court said was that the mere possession of keys isn't enough but let's see if there was something more than mere possession of keys. It looks on page a 151 152 and also on a 42 the Miss Pashada was Mr. Montalvo Flores his girlfriend that was in the hearing record and secondly that Miss Pashada was observed by officers giving keys and the car to Mr. Montalvo Flores and that's in the cross-examination of homes by on page a 176 177 182 and 197 and in addition. It's also preliminarily noted on a 42. Is that correct? So that was in the police report and that and a 42 is the police report but also the other indications are that the cross-examination by Mr. Vigiano Vigiano of Detective Holmes. Yes, and the officer said that that possibly occurred. He said they know they observed the officers other officers observed her giving the keys and the car to Mr. Montalvo Flores. That's what the testimony was. I will I will concede that judge and then thirdly the officer saw Mr. Montalvo Flores an officer again, not Holmes, but he was reported to him that another officer saw Montalvo Flores quote operate the vehicle and also be in possession of the vehicle and that was on I believe it was 181. Yes, touch and then next is that the unauthorized driver had permission to operate this this car. In other words, he wasn't on the contract with Enterprise correct. Next that Montalvo Flores had the keys to the car when he was arrested. That's that's agreed by everyone correct. Next Montalvo Flores says that's not my rental car. Those those are my rent a car keys. He said that when he was arrested. Did he not correct? The car was right outside the hotel room with and it was locked when he was arrested correct and that there was no record of the car being lost or stolen correct. And then finally the government seems to acknowledge that he had a subjective expectation of privacy on page a 70. That's possible under the cast test. I mean, it's pretty he had a subjective real what we're really fighting about is what society find that there was a reasonable expectation of privacy beyond his subjective correct objective. All of those things put together for the district court merely to talk about the possession of keys. Tells tells me that there was a whole lot missing from district courts. Decision here. Finding statement, the district court certainly heard all of this evidence all of the testimony and and why isn't that clear error? Because the district court had the discretion to credit the testimony the the information that the officer was relaying during the hearing. You mean the district court doesn't believe Detective Holmes. I believe the district court said on several at several points during in its decision in his decision that he did credit the officer for that if he credited all these things should have come in. Well, he didn't credit everything. He didn't credit the idea that the the car was exchanged. Whatever that means between Mr. Montalvo Flores and his girlfriend. The detective who would you would think would have credibility said that other officers and also there's an incident report that they observed officer. One of Pashada the girlfriend giving the keys and the car to Montalvo Flores. Well in this had the keys when he was arrested, right? Well in the same way that the the court wanted to hear more than just a hearsay version of that from the hearsay is allowed at depression hearings is allowed but the district judge wasn't required to accept that hearsay testimony, but you got to give a whole lot of reasoning as to why you wouldn't accept that from a credible witness. That may be true, but I don't think that if the judge also has evidence on the other side saying well, it's not sufficient. What evidence is there on the other side? Well, we didn't have Mr. Montalvo Flores or his girlfriend coming to testify whether or not he had permission to use the car. It sounds to me from what I just read to you. You've got eight or nine items that you don't necessarily need it. You need a good cross-examination of homes, which appears that there was well again, this is I think a balancing test and what we don't have from Mr. Montalvo and this goes to the objectivity of the expectation of privacy. You don't have permission from his girlfriend. You don't have permission from Enterprise. He's not a recent occupant and he wasn't an authorized driver. So those those findings from the district judge's perspective outweighed the finding that there was keys in his pocket and I mean he didn't find locked doors, but that's certainly in the record. Let me move on to other it's would seem that possibly good arguments would have been that the search was either incident to arrest or the automobile exception is when you arrest somebody near their automobile. You question is was he near enough here that you can inspect the automobile in connection with that arrest. Those arguments were not made were they they were not judge, you know, why I don't know why and this court can affirm for those reasons, but we're not suggesting you forfeited those arguments. We're not suggesting that you need to reach those arguments. Okay, the so the on what do you rely then for saying that there was no clear error here? The fact that an officer testified that oh, I should say that the fact that the district judge weighed the officers testimony considered the fact that there was there was a statement in a police report saying that the Mr. Montalvo Flores is a girlfriend exchanged the car with Mr. Montalvo Flores and didn't credit that I think the judge has did he put in the opinion? I don't credit this testimony and that testimony and the next testimony what the bottom of I think it's page 12 of the record. Although detective this is again page 12, although detective Holmes testified that other detectives had apparently seen his girlfriend exchange the car and car keys with defendant detective Holmes was not able to testify as to when or where that observation was made or if detectives subsequently would have to be within 24 hours. From November 5th to November 6th that that may be true, but that didn't come out in the hearing. That's in Congress to say that somehow the fact that he didn't say exactly when it occurred is definitive. It doesn't fly sometime within 24 hours. She rented a car from Enterprise. She gave car. She was his girlfriend. She gave the keys and possession of the car to Montalvo Flores Montalvo Flores was observed driving the car Montalvo Flores had the keys when he was arrested. He said those are my keys and the car was right outside the hotel room. I would I guess I would dispute the fact that your said your recitation that Montalvo Flores was driving the car. I don't think he was a home said that other officers observed him driving the car and that is on. Again a 176 177 182 and 197. I don't even think that defense counsel would agree with that statement judge. He was driving the car. I'm just looking at what's in the record. I mean, I can only point the court to what I'm sorry. I'm sorry. What I gave to you was the handing over the keys the officer they saw Montalvo Flores operate the vehicle quote-unquote. Right that is in the record, right? And we don't know what that means. And I think we just heard usually means you're driving the car. Well, we just heard from defense counsel that he was not driving the car. So I don't let's see. Let's move when she comes back on rebuttal and see if she agrees that was a misstatement in the record then by Detective Holmes. But your point is the district courts not required to credit hearsay statement. Correct judge. It's admissible. We all know it's admissible, but it doesn't have to be accepted lock stock and barrel. Correct. And you made an interesting point about the record and Miss Arkell was just answering my question, but you're I heard you say that this timing issue about the proximity between the arrest and the rental of the car was was to horse the record. It's not in the record. Not in the record. It's not in the record. Correct. So if it's not in the record the district court wasn't supposed to dig invented himself. Correct. And that's part of the issue about or the risk of them not calling witnesses. They could have presented. They could have called the officers who saw if they presented the timing question of the 24 hours at the hearing then you could have met that with your own witnesses in response. Correct. And as the as the court has already acknowledged that it's the defendant's burden to make these and you agree that we're dealing with clear error as a standard over here. I do judge. Okay. Do you deny that it's perfectly plausible that the girlfriend would have given him permission to drive this rental car and had given him the keys that he didn't, you know, swipe the keys off the table when she was asleep or something. It's perfectly plausible that he was a permitted user of the car. Correct. It's plausible. But again, we just we're just dealing with no evidence put on the record. I mean, we're not even in bird bird himself testified in Jones the United States Jones testified about his authority to be in an apartment. So Montalvo Flores is just not similarly situated to those defendants. Yeah, the district court denied a motion in this case to suppress know why why do you disagree with that the motion to suppress? Agree with it. I agree. Why do I agree with the denial? Because I agree that the district court denied the motion to suppress. Oh because Mr. Montalvo Flores did not have a reasonable expectation of privacy in the rental car. Get enough standing to to protest. Well, the question of him operating the car and I'm looking at page 181 the question of Mr. Montalvo Flores is of Council. We made it clear. There was no criminal activity with the vehicle and that he did not operate the vehicle. He just possessed the keys correct answer one of the other members one of the other officers did see him operate the vehicle. So it this is could all you could have just agreed with that. It was just keys. He goes. Nope, that's not right. One of the other officers saw him actually operate the car. It says it is in the record and but I don't think that anyone disputes neither party disputes that Mr. Montalvo Flores was not driving the car at the moment. He was arrested it but before that too, I understand how do I get how do I get around this statement in the record? I understand that there's a statement. I mean, this is a credible officer. The problem is for purposes of the crime. He doesn't want to be driving the car for purposes of suppression. He wants to be driving back. We judge both sides are 22 years area. Exactly. I thought that would have been my next point but I don't want to ascribe it is cases unusual did that was Miss Pachetta arrested at all for anything. I'm not aware of that judge. Okay. Thank you. Unless the court has no more questions. I am happy to take my seat and to ask the court to affirm for the reason the district court provided. Thank you. Mr. Ramsey will hear rebuttal from his Arkell. Thank you. Your honors. Could you start with the issue of whether the 24-hour proximity is is the horse the record? It was not in the hearing record. The government submitted the rental agreement, which was referred to several times and on page. I just had it on page. On page. Okay, page 76. It gives the date of the it's the rental agreement, which was all right. So that's it. We know from the record when the car was rented and we know from the record when he was arrested. Correct. Was there any argument made at the suppression hearing regarding the proximity? I don't know the honor. All right. Thank you. Judge Ambrose. You're absolutely right that judge that that detective Holmes did testify that he his memory was that Mr. Montalvo Suarez was seen operating cart his more consistent testimony. So I shouldn't have said there was no evidence in the evidence that other officers observed corrected a question on page 181 other officers and another officer, excuse me, singular saw him operate the vehicle, right? The so there was evidence but it's more his more consistent testimony was he didn't see him operate and I would I'm going to have to go back. I'm sorry and and check whether there was any I thought he also said that that he didn't think there was that there had been observation of him operating. I think that was his more consistent testimony, but there was that instance in the record, but I could not agree with another questions on a statement, but there was a whole lot missing from the district courts analysis of the expectation of privacy ruling and your honor gave a list of the other what would support a finding that he had the ability the right to exclude. And I wanted to ask if any of the other if the courts had any other questions about the other issues. We certainly think the court should not be consent and should not reach the as the Dow Dell recent Dow Dell opinion. Vehemently indicated should not reach the stadium was ultimately convicted of possession with the intent to distribute. Yes, that's right. 300 grams of cocaine that were found in the number. Yes. Yep. If your honors have no other questions. Thank you very much. Let me just ask sorry the bottom of the bottom of appendix 12. I'm looking at the district courts opinion the paragraph beginning with here by contrast. Yes, just tell us what's clearly erroneous about those findings there. Could I just pull it up but because it distinguishes it distinguishes this case from bird in an irrelevant manner. Well, no, I'm not making it just I think you and my paragraph above I I'm saying the bottom of the of appendix 12 where it says here by contrast. That's where the district judge goes through the facts and cites the hearing transcript correct. And what's clearly erroneous about those factual findings and not talking about legal precedent. It is the it is the instance of testimony from Detective Holmes that his memory is that Mr. Montalvo was seen operating a car. So even on that score that was incorrect that there was that there was no testimony up to that. Where did he say that there was no testimony to that effect? He said it was never here by contrast that defendant was never observed possessing operating or otherwise exercising any sort of control other than possessing the keys. But as Detective Ambrose highlighted Detective Holmes detectives and my wife will tell you there's no way in hell. I'm a detective but stick with me on that paragraph. Although Detective Holmes testified that other defectives detectives had apparently seen the girlfriend exchange of keys Holmes was not able to testify as to when or where that observation was made or if they subsequently observed defendant operating over the vehicle prior to his arrest. Well, so well the first sentence the problem is that ignoring Detective Holmes one item of testimony that he was seen operating the car in the next sentence, but isn't the way to read the first sentence that home because Holmes never saw him observing and it's just hearsay that the correct as Mr. District Court not crediting the hearsay statement correct, but also that he's the district court in this sentence is sort of broadening what the impact what the import of that was there was other evidence of him exercising control in the sense that he said they're my keys and my car as Judge Ambrose emphasized my keys my car. He was seen District Court didn't have to credit that didn't have to credit it but should have considered it. It was an important piece of evidence. It was also he did District Court did say that he possessed the keys the courts opinion says that I think it was the assertion. I think an assertion of owning of the there being your keys is important. It's so ordinary, but it's important and it's important in the context of this case. Also the idea of the other items that Judge Ambrose listed that he had been seen the exchange of the keys on the car the relationship between between Miss Pashada and Mr. Montalvo Flores. There were other indicia of the ability to exclude of the right to exclude. It's an unusual but perhaps it's the ordinariness of the of the circumstances that make it so unusual, but I if that answers, thank you. Thank you very much. Thank you very much. Thank you. Mr. Ramsey. We appreciate the helpful argument from both sides. We'll take the matter under advisement.